You're Wessman also? I am. Okay, so good, then you're not going to need 20 minutes are you? Because you've already made most of your arguments. Not unless you need me to need 20 minutes. It would be helpful to me if we could get away from the California Insurance Commissioner and focus on Wessman and her situation. Okay. Well, let me start by saying that I'd like to talk about Ms. Wessman's claim and view it as if we're reviewing it under a de novo standard of review, because that would sort of, I think, approach both of my issues. So let's talk about Ms. Wessman. Ms. Wessman submitted her claim forms. Her forms were supported by her orthopedic surgeon, by MRI reports, by chiropractic reports, and she was actually paid for her short-term disability benefits for the maximum period, which was 24 months. And then her claim got rolled over to the long-term disability department, and this is where the trouble usually begins. Even though, and I know that short-term policy is not in the record, but I think I can safely represent to you that the standard is usually the same. Provident had an in-house doctor look at her records, and he summarized them, and then at the very end, threw in a sentence that said, well, I just think that the assessment of total impairment is overly restrictive. Now putting aside the fact that he didn't... Dr. Wessman? Lance Matheny. I think he was discussed in the previous case. Actually, he's the doctor in this case, not the Ferraghi case. Matheny is his name. Okay. So, putting aside the fact of maybe his report wasn't complete, and any attacks I might have on his report, let's just take his report at face value, okay? Dr. Matheny says, Ms. Wessman cannot perform highly repetitive activities, especially those requiring prolonged grip activities. There's that word again, prolonged, but let's assume we all know what it means. This is at the record at page 669. Then Provident calls the employer. The employer says, to do her job, Ms. Wessman has to perform repetitive hand motions and grasping six times an hour. That's at page 660. Conflict there. There's a problem here. He says she can't do highly repetitive activities. The employer says she's got to grasp and do repetitive hand motions six times an hour. Dr. Matheny says she can't do more than light lifting. That's at page 669. The employer says she needs to lift from the floor, from the knee, from the waist, frequently for client files that weigh one pound, occasionally for files that weigh five pounds, and once a day for files that weigh 30 pounds. Got a conflict here again. Dr. Matheny says Ms. Wessman needs a frequent change of position. Employer says she has to sit for two and a half hours at a time with no change of position. If this case was at 659, the employer's statement is at 659, the doctor's statement is at 669. 2.5 hours? Yeah. So she doesn't get a break? Not for 2.5 hours. Every 2.5 hours she gets a break. Yes. Or is that just total hours per day? No, total hours per day is longer than that. Six hours. Right. I see. If this case was before a district court who's reviewing this case on a de novo basis, that's the end of the case. Based on their own doctor. She meets the eligibility requirements for disabled right there. But let's talk about what else is in the record. Providence is not satisfied, so it decides that Dr. Matheny needs to talk to Dr. Wessman's doctor. Maybe he can convince her doctor that she's not disabled. I don't know what the point of the conversation was. But they make three attempts to call the doctor. They can't find him. They give up. And then they say, well, we couldn't reach your doctor, so that's one of the basis for the denial. Then in the denial letter, which is at page 646, they misstate what Dr. Matheny says. Instead of saying what Dr. Matheny, remember, Dr. Matheny says the assessment of total impairment appears overly restrictive. They say something like, our doctor doesn't think you're disabled, which is not really what he says. Then when Ms. Wessman appears, appeals, I'm sorry, and asks Providence what else it needs, Providence replies to her, we're not really sure what we don't have, but if we need something else, we'll let you know. This is at the record on 631 and 638. It then denies the appeal in part on the basis that it doesn't have updated MRI or CT scans of her spine. This is at 616 and 617. But it never asks her to get those or to provide those to it. Again, a district court would have no problem on a de novo standard of review finding that this was an improper denial of her claim. Now, if I could back up a minute to the other discussion we were having about the standard of review, because I do want to correct one, I think, misunderstanding about what district courts have done since the notice of withdrawal and the opinion letter came out. Because there's been a lot of discussion about district courts finding that what the Department of Insurance has done has not been persuasive. And I want to clarify what our position is and what the district courts have done. First of all, our position is not that what the district court, I'm sorry, what the Department of Insurance has done is retroactive in the sense that it requires this court to do something to follow it. That's not our position. Our position is that the discretionary language violates California law. And even if the Department of Insurance had done nothing, the discretionary clauses violate California law. The Department of Insurance decision, the order of the commissioner and the adoption of hearing officer's decision following the notice of withdrawal is persuasive. And it's true. Sotomayor, has any California case directly addressed the issue? No. Not the issue of, I'm sorry, not the issue of whether the order following the commissioner and the hearing officer's decision is persuasive, no. No, no. Okay. I apologize for my question. My question really should have been, has any California case taken a look at the insurance policies in question and held that those clauses are either unconscionable, illegal, somehow violate California's common law, anything of that kind? No. No published decision has. There is a decision, an unpublished decision from Judge Jeffrey White in the Northern District that has found that discretionary clauses violate California law. That's a federal court. I'm sorry. No California court has. No California state court. Correct. But it wouldn't necessarily come before a California state court. That's right. Because it's an ERISA claim which can only be filed in federal court. That's right. I also wanted to add, however, and I think this is an important point that I wanted to add. After Judge Patel's decision, which was a decision that was discussed by counsel. That was the Firestone. Right. The Firestone decision. There was a. And Horn. I'm sorry. Judge Patel has two cases. Two cases. Horn and Firestone. That's right. There's a decision by. I'm sorry. By Judge Morrow. That's in Toth. Right. I think the Toth decision is the more persuasive decision on why we can rely on the insurance code statute to challenge the discretionary language. And the Toth decision more carefully tracks the legislative history of the insurance code statute. The statute I'm talking about is 1029.1.5, and specifically subsection K, which says, it says that any insurance policy that is approved by the insurance commissioner, there's a presumptive conclusion that it is proper under California law. But that particular subsection is exempt as it applies to group policies, group disability policies, under insurance code section 10270.95. And Judge Morrow, I think, has the proper analysis of why Judge Patel's decision in Firestone was not right in holding it. Correct me if I'm wrong, but at least as I was reading these district court cases, unfortunately I couldn't, offline I was unable to get a copy of Toth, either off West or off of Lexis. But one of the cases says that in Toth, the district court essentially concluded that the discretionary clauses were okay under California law. Is that right? No. No? No. What did she conclude? She concludes that a litigant can use 10271.5, I'm sorry, 1029.1.5 to challenge discretionary clauses in a lawsuit. What was happening after Firestone was that litigants were beginning to file a written mandate against the insurance commissioner challenging the discretionary clauses, thinking that was the only vehicle to do it. And she decides that, no, you can in a district court case challenge the validity of the clauses. So did she ever make a determination? Then she goes on to say that the notice of withdrawal and the opinion letter are not persuasive to her under the Singleton analysis. Right. So she does go on to not agree with the opinion expressed by the Department of Insurance in the opinion letter and the notice to withdraw. She's not persuaded by that. But now we have the hearing exam. And now we have a new decision to analyze and decide whether it's persuasive under the Singleton analysis. And that's where our focus is now. And ---- There's one other case called Lundquist that I understand. Right. Right. Which goes along with Judge Toth. Right. And Judge Toth also relies ---- Let me do it for him. Sorry. Judge Morrell relies on an unpublished decision or actually an order in a case by Judge Damrell from the Eastern District, which is not available on Westlaw, but it is discussed in her decision. And I think both of them do a better job of following the legislative history of the statute. So I wanted to mention that. And going back to the third request for judicial notice, I think it's important to also note that as a part of the settlement agreement, Provident has withdrawn all objection to that order and the decision of the hearing officer. So where we left off when the district courts were making their decisions on the case was Provident had the right to file a superior court action challenging what the department was doing. As a part of the settlement agreement, they have withdrawn all objection. So they are stuck with it. Whatever it means, and this court can decide what it means, they are stuck with it. Well, that may well be the case, but the settlement agreement, at least as I understand it, excludes cases that went to litigation and a judgment was entered. Correct. But the order I'm talking about, the order adopting the hearing officer's decision is the order that decides that discretionary clauses violate California law. And it's that order that they've withdrawn objection to.  But that doesn't mean we're bound. No. That a court of law is bound by what the commissioner says because it's our responsibility or the California court's responsibility to determine what the law is. Correct. And that was my first comment. We're not arguing that the order is retroactive or binding on this court. We're simply saying that it's persuasive, but that even if it doesn't exist, California law requires this court to hold that those discretionary clauses cannot be allowed. Why wouldn't it be best for this panel to abstain from ruling on that issue and simply wait until a panel of this court is faced with either Horn or Fenberg or one of the other cases in which the issue was thoroughly threshed out at the district court level? Well, I think this court is as well prepared as any panel is going to be because you have before you everything you need, which is what's in the request for judicial notice. Horn and Fenberg are going to get the same thing on appeal because they were looking at documentation that is no longer in effect because it's been replaced by the settlement agreement and the order of the commissioner adopting the hearing officer's decision. The documentation they were analyzing were preliminary documents issued by the Department of Insurance, and now you have the final documentation. And it has been briefed in full in the briefs before this court. It hasn't been briefed before the district court. I don't exactly know what that adds to the mix, but it will not have been fully briefed. I don't recall reading by anybody a careful retroactive analysis in any of the briefs. We didn't make a retroactive analysis. We didn't argue it was retroactive, so there wouldn't have been a need to argue on the other side that it wasn't retroactive. No, you're using the insurance commissioner's conclusions as persuasive of what the California Supreme Court would hold if faced with the issue, that these clauses were unconscionable and, therefore, should be disregarded ab initio, from the first time they appeared. That's correct. That's correct. And that issue we have not briefed because this just came out in October. And I'd be happy to brief it for you, or the Court could certify it to the California Supreme Court, and we could brief it in front of the California Supreme Court. Because no matter how much we brief it here, if that's the ultimate issue is what would the California Supreme Court say, we would have to ask the California Supreme Court. What is your experience with issues certified by federal courts to the California Supreme Court? I've had it happen once from this court recently, and it was an insurance issue, and the California Supreme Court accepted and decided the issue, and the process worked quite well. Was that the Northridge earthquake? Yes, it was. If there's no further questions, I will. Thank you. I guess I don't have to introduce myself again. We spent a lot of time together today. Getting to the facts of the Westman case, I believe Judge Singleton wanted us to do that. This is the Jordan case. It's the Jordan v. Northrop Grumman case, which the Ninth Circuit evaluated. In this case, the company obtained some medical information, obtained the job analysis, did a medical review by an orthopedic surgeon, contacted the employer, and the employer said within these restrictions she's capable of doing her job, denied the claim. We asked her physician to provide us with information, anything to help us out on interpreting his very conclusive statements, which conflicted. His clinical findings would say, see, there's nothing there, but she complains there. She has some problems, so I'm going to make this diagnosis. Never once did her doctor respond to our request. Three times by phone, one time in writing before the denial, and one time after the appeal. Never once did her doctor respond. Under the Jordan case, what happens? Jordan says that's not an abuse of discretion. The company is entitled to rely upon its own analysis, and, in fact, there is a questionable credibility and reliability of the treating physician because this doctor has not responded nor attempted to cooperate in the process. Let's take a step back, though, and address specifically some of the issues that were raised before by appellant. First, Provident considered the entire medical condition of this individual. The medical record reviews demonstrate that. Her pain was always considered, and, in fact, what the company decided is she has some restrictions and limitations, but she can work. As I mentioned, the treating doctor refuses to communicate, validates Provident's decision because five different attempts were made, and he never responded. And the fact is, what do we know about her doctor's analysis? Well, her doctor's analysis said with the exception of some cervical problems, her range of motion was normal for her many problems. He never found her shoulder complaints warranted a diagnosis. He consistently referred to Ms. Westman as a he, tells you how much he knows his patient. And he diagnosed this individual with something called epicondylitis, which is tennis elbow. Basically, he based that solely on, if you look at 722 and 675 in the record, this is not a condition that she truly had, and it was questioned by our doctors because it was only based upon her complaints of tenderness. And lastly, he never recommended any serious treatments. He never recommended surgeries. He never recommended orthopedic appliances to his sister. And, frankly, her own chiropractor found in his last note to us in May 2002 that the severity of her condition was very low to moderate, and he did not have a low, he had a low-complexity plan to treat her. What we then have is a challenge to the vocational analysis here. An important event that was not analyzed or mentioned by appellant was that once Dr. Tyler did the analysis and said, yes, this individual has some problems, but she can have these certain restrictions, what do we do? We got the job analysis. The job analysis said very specific things, and we called the employer. The employer said specifically, Westman was not required to be seated, and she could change positions as needed. That's administrative record 655. She also had to only lift one file a day. Now, this file could be one pound, five pounds, or 30 pounds. One file a day. The challenge to the lifting requirements here is the appellant said, I can't do the lifting. Well, that's what her attorneys have said. She never actually told us that. But the fact is the administrative record demonstrates that we asked, can someone else help her? Yes, there's clerical staff available. Yes, there's people to assist you. Well, the two challenges here we have to sitting and to lifting don't come to anything because the company analyzed those issues and determined that she could, in fact, perform her job within those restrictions as we confronted her employer. And lastly, this repetitive movement argument, we said she can't do repetitive movement that involves prolonged or strenuous gripping activities or prolonged pronation or seponation, which essentially is the tennis elbow, that type of movement, and the golf movement. Well, you know what? Six times an hour having to do repetitive activity does not incorporate those repetitive activities. And essentially, Dr. Brock concluded on the appeal that she didn't even have, necessarily have restrictions because this epicondylitis or tennis elbow diagnosis was something that couldn't be proven. And what's very key here is neither Ms. Wesman nor her doctors, her doctor specifically because she was primarily a senior chiropractor, neither one challenged these opinions. Neither one said, yes, she can't lift this amount, or yes, she can't, yes or no, she can't sit this amount. The company relied upon the information that they had. Well, under Jordan, that's appropriate. Quite simply, with someone who has a limited physical requirement imposed upon her sedentary occupation, Provident properly considered that her claim was not payable because she was not totally disabled. We looked at her medical records, multiple medical reviews before the initial denial and on appeal, vocational evaluations, communication and clarification with her employer, and repeated, repeated attempts to have her doctor give us any information, both before the claim and on appeal. That was not done. This is Jordan. Now, if you'd like me to address any of the issues that were raised with regard to the DOI actions, I'd be more than happy to do that. We beat a dead horse, haven't we? I think we've heard enough to give us plenty to work with here. Thank you very much. Thank you very much, counsel. We appreciate your arguments. Westman v. Provident will be submitted, and Farmer v. Allstate is submitted on the briefs, and this session of court will be adjourned. Thank you.
judges: Wardlaw, Paez, Singleton